IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Johnny Thomerson, | ) | Civil Action No. 2:18-cv-1571-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| Richard DeVito and Samuel Mullinax, | ) | |
| both individually and as Liquidating | ) | |
| Shareholder Trustees of Lenco Marine, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants Richard DeVito and Samuel Mullinax's motion for summary judgment (Dkt. No. 28). For the reasons set forth below, the Court grants in part and denies without prejudice in part Defendants' motion.

I. **Background**

Plaintiff Johnny Thomerson alleges that the Defendants, the former owners of Lenco Marine ("Lenco"), failed to provide Plaintiff a three percent ownership interest in Lenco. Lenco manufactured and sold trim tabs and other products to boat manufacturers, and Defendant Samuel Mullinax served as the CEO and Defendant Richard DeVito was the president. (Dkt. No. 28-9 at ¶ 3 – 4.) Lenco was sold to Power Products, LLC in December 2016. (*Id.* at ¶ 13.)

Plaintiff was hired by Lenco no later than May 2007. (Plaintiff's Deposition, Dkt. No 28-1 at 35.) Plaintiff testified that during discussions regarding his compensation with Defendant DeVito prior to starting at Lenco, they had a "discussion that we [Plaintiff and Brian Robinson, another employee of Lenco] both wanted to have equity ownership at some point in time in the future." (*Id.* at 29.) Plaintiff acknowledges that at the time he began at Lenco, he did not yet have an agreement regarding an equity interest in the company, and instead Defendant DeVito stated

that they would "work on that as we go on down the road." (*Id.* at 33 – 34; Plaintiff's Deposition, Dkt. No. 28-2 at 23.) Though Defendants dispute the nature of the conversation, Plaintiff testified that Defendant DeVito ultimately provided some detail on the equity plan in early 2009,[1] informing Plaintiff and Robinson that Lenco was going to buy back a 15 percent interest from a minority shareholder, Matthew Muer, and distribute it as a three percent share to five employees, including Plaintiff and Robinson. (Dkt. No. 28-2 at 26 – 27; 30 – 31; 35.) Plaintiff at the time believed that the five sets of three percent ownership share would be issued contemporaneously with the stock buyback. (*Id.* at 30.)

In 2011, Plaintiff and Robinson had two conversations with Defendant DeVito regarding the ownership share.[2] When Plaintiff and Robinson were in Florida with DeVito, they approached DeVito asking, "where were we with our deal," meaning the "stock transfer." (Plaintiff's Deposition, Dkt. No. 28-3 at 5 – 6.) Defendant DeVito, as they approached, "pretty much blew [them] off." (*Id.*) On another evening during a cookout at Defendant DeVito's house, Plaintiff testified that he and Robinson again asked about the stock transfer, and Defendant DeVito "abruptly left our presence and went into his house." (*Id.* at 7.) Robinson resigned shortly thereafter without any ownership share of Lenco. (*Id.*; 29-2 at ¶ 14.)

Defendant DeVito also told Plaintiff that he did not want to distribute ownership shares in the company while there was a pending lawsuit against Lenco, filed by Bennett Marine. (Dkt. No. 28-2 at 32.) Plaintiff testified that this was because Defendant DeVito wanted to protect them from potential liability in the lawsuit. (*Id.*; 29-1 at ¶ 6.) The Bennett Marine litigation concluded

---

[1] Plaintiff testified the conversation occurred in early 2009, though Defendants submitted evidence showing that Lenco purchased the 15% ownership interest in November 2007. (Dkt. No. 28-9 at 4.) The distinction between 2007 and 2009 does not affect the Court's disposition of this motion.

[2] Plaintiff testified these conversations occurred approximately a month before Robinson resigned from Lenco. (Dkt. No. 28-3 at 6.) Robinson resigned in August 2011. (Dkt. No. 28-9 at ¶ 7.)

in September 2013 in favor of Lenco. (Dkt. No. 28-3 at 3.) However, when the allegedly impeding Bennett Marine lawsuit ended, Plaintiff did not receive the promised three percent interest. (Dkt. No. 29-1 at ¶ 10.) When Plaintiff asked about the three percent of equity, Defendant DeVito refused to speak about the shares, telling Plaintiff he "didn't want to talk about it or we'd [DeVito and Plaintiff] talk about it later." (*Id.*) Finally, near the end of 2016, Plaintiff asked Defendant DeVito whether he "still intend[ed] to fulfill [his] promise to me of my 3%," and DeVito stated "No, I am not." (*Id.* at ¶ 11; Dkt. No. 28-3 at 12.)

Plaintiff filed this action on April 9, 2018, in the Charleston County Court of Common Pleas. (Dkt. No. 1) The action was removed to this Court on June 8, 2018, based on diversity jurisdiction. (*Id.*) Plaintiff brought six counts against Defendants: Breach of Contract and Covenant of Good Faith and Fair Dealing (Count 1); Promissory Estoppel (Count 2); Quantum Meruit and Unjust Enrichment (Count 3); Negligent Misrepresentation (Count 4); Constructive Fraud (Count 5), and; the South Carolina Payment of Wages Act ("SCPWA") (Count 6). (*Id.*) Each claim relates to the alleged failure to provide Plaintiff with a three percent ownership share of Lenco. Defendants moved for summary judgment on February 15, 2019. (Dkt. No. 28.) Defendants argue that Plaintiff's claims are barred by the statute of limitations and, in the alternative, that Plaintiff's claims fail on the merits. (*Id.*) Plaintiff opposed the motion, and the Parties submitted additional briefs in support of their positions. (Dkt. Nos. 29, 32, 37, 40.)

## II. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. Discussion

Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations. South Carolina applies the "discovery rule" to determine when the statute of limitations begins to run. Under "the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 327 S.C. 116, 489 S.E.2d 615, 616 (1997) (emphasis added). The "exercise of reasonable diligence" requires that the injured party "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645, 647 (1996). The date on which the discovery

of a cause of action should have been made is an objective question. *Bayle v. S. Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736, 740 (S.C. Ct. App. 2001). Therefore, to the extent that there is no conflicting evidence regarding whether a claimant should have known that a cause of action existed, resolution of the question is appropriate at summary judgment. *See Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672, 681 (2000).

Here, drawing all inferences in favor of Plaintiff, the undisputed evidence demonstrates that Plaintiff knew or should have known no later than September 2013 that Defendants had refused to provide him an ownership share of Lenco. To begin with, the undisputed evidence demonstrates that Brian Robinson, who had also been promised a three percent share of Lenco, departed the company in 2011 without any ownership share. However, regardless of Robinson's departure in 2011, Plaintiff testified extensively that he believed he would receive a three percent share of the company when the Bennett Marine litigation ended. (Dkt. Nos. 28-2 at 32; 29 at 4.) The Bennett Marine litigation ended in September 2013 and, at that point, Plaintiff knew or should have known that a cause of action existed for the failure to provide the allegedly promised three percent ownership share. (Dkt. No. 28-3 at 3.) This determination is supported by the undisputed evidence that Defendant DeVito previously "blew [Plaintiff and Robinson] off" and "abruptly" walked away when asked about an ownership share.

The Supreme Court of South Carolina's decision in *Maher v. Tietex Corp.*, 331 S.C. 371, 379, 500 S.E.2d 204, 208 (Ct. App. 1998) strongly supports the determination that Plaintiff knew, or should have known, of his cause of action no later than September 2013. In *Maher*, the plaintiff, seeking an unpaid bonus, "[t]wice…raised his 'questions' about the plan to [his supervisor], and twice, by his own words, he 'walked away' without 'really getting' a satisfactory response to his concerns." *Id.* at 379. The Court ruled that the plaintiff's "admitted dissatisfaction with this

response is clear evidence that he knew, could have known, or should have known at that time that he might have a cause of action over the fifty percent bonus plan." *Id.* Here, Plaintiff saw Robinson depart without an ownership share in 2011, was repeatedly rebuffed when he asked about his ownership share and, ultimately, in September 2013, was aware that the Bennett Marine lawsuit had concluded. The statute of limitations therefore began running by September 2013.

Plaintiff, however, presented evidence that he continued to "believe" that Lenco would ultimately provide the three percent share to him. (Dkt. Nos. 29-1 at ¶ 8; 29-2 at ¶ 15.) However, this unreasonable subjective belief does not toll the statute of limitations. *See Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2014 WL 12849772, at *5 (D.S.C. Nov. 13, 2014) (fact that plaintiff "'hoped' that the Company would ultimately pay him what he believed he was owed did not delay or toll the statute of limitations."). Instead, drawing all inferences in favor of Plaintiff, it is clear that Plaintiff knew, or should have known, no later than September 2013 that a cause of action existed for Defendants' failure to provide him a three percent share.

Under South Carolina law, the statutes of limitations for Plaintiff's claims for breach of contract, breach of covenant of good faith, constructive fraud, negligence, and SCPWA are three years. *See Walbeck v. The I'On Co., LLC*, No. 2015-001590, 2019 WL 1065928, at *10 (S.C. Ct. App. Feb. 27, 2019) (statute of limitations for negligent misrepresentation is three years) *citing* S.C. Code Ann. § 15–3–530; *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2014 WL 12849772, at *4 (D.S.C. Nov. 13, 2014) ("statutes of limitations for breach of contract and SCPWA claims are three years.") *citing* S.C. Code Ann. §§ 15-3-530; 41-10-80; *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 WL 5587854, at *8 (D.S.C. Oct. 10, 2013) ("the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract.") *quoting RoTec Servs., Inc. v. Encompass*

*Servs., Inc.*, 359 S.C. 467, 597 S.E.2d 881, 884 (S.C. Ct. App.2004); *Glenn v. Bank of Am.*, No. C.A. 6:10-1974-HMH, 2010 WL 3786171, at *2 (D.S.C. Sept. 22, 2010) (statute of limitations for constructive fraud is three years) *citing* S.C. Code Ann. § 15–3–530. Therefore, since Plaintiff filed his claim in 2018, long after the applicable statutes of limitations had run based on Plaintiff's discovery date of September 2013, his claims are time barred and Defendants are entitled to summary judgment on those claims.

The Parties, however, disagree over whether the statute of limitations bars Plaintiff's equitable claims for promissory estoppel, quantum meruit and unjust enrichment. Plaintiff is correct that, generally, South Carolina law holds that "the statute of limitations does not apply to actions in equity." *Dixon v. Dixon*, 362 S.C. 388, 400, 608 S.E.2d 849, 855 (2005). However, as actions based on a contract, obligation or liability, courts have held that actions for quantum meruit and unjust enrichment are governed by the three-year statute of limitations. *See Crossroads Convenience, LLC v. First Cas. Ins. Grp.*, No. 1:15-CV-02544-JMC, 2017 WL 1135132, at *6 (D.S.C. Mar. 27, 2017) ("Under South Carolina law, quantum meruit claims are subject to § 15-3-530(1)'s three-year statute of limitations.") (collecting cases); *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *3 (D.S.C. Jan. 22, 2014) ("Under South Carolina law…unjust enrichment claims are governed by a three-year statute of limitations.") *citing* S.C. Code. Ann. § 15-3-510(1); 530(5). Contrary to Plaintiff's assertions, a South Carolina court has also applied the three-year statute of limitations and discovery rule to unjust enrichment claims. *See Graham v. Welch*, 743 S.E.2d 860, 862 (S.C.Ct.App.2013) (applying three-year statute of limitations applies to unjust enrichment claims and holding claim begins to run when injured party knew or should have known that the claim existed). Plaintiff's claims for unjust enrichment and quantum meruit and therefore barred by the applicable statute of limitations.

Finally, the Court has certified to the Supreme Court of South Carolina a question of law that may be determinative of the promissory estoppel claim in this matter. Therefore, the Court denies without prejudice Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** Defendants Richard DeVito and Samuel Mullinax's motion for summary judgment (Dkt. No. 28). Defendants' motion is **GRANTED** as to Plaintiff's Counts One, Three, Four, Five and Six. Defendants' motion is **DENIED WITHOUT PREJUDICE** as to Plaintiff's Count Two for Promissory Estoppel.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 2, 2019
Charleston, South Carolina