IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Johnny Thomerson, </br></br> Plaintiff, </br></br> v. </br></br> Richard DeVito and Samuel Mullinax, both individually and as Liquidating Shareholder Trustees of Lenco Marine, </br></br> Defendants. | Civil Action No. 2:18-cv-1571-RMG </br></br> **CERTIFICATION OF QUESTION TO THE SUPREME COURT OF SOUTH CAROLINA** |

After reviewing the parties' briefing on a motion for summary judgment, this Court has determined that the case presents a question of law of the State of South Carolina which may be determinative of this case. It also appears to this Court that there is no controlling precedent in the decisions of the Supreme Court of South Carolina. Therefore, pursuant to South Carolina Appellate Court Rule 244, the United States District Court for the District of South Carolina certifies the question of law set forth below.

## I. Certified Question of Law

Does the three-year statute of limitations of S.C. Code Ann. § 15-3-530 apply to claims for promissory estoppel?

## II. Findings of Fact

Plaintiff Johnny Thomerson alleges that the Defendants, the former owners of Lenco Marine ("Lenco"), failed to provide Plaintiff a three percent ownership interest in Lenco. The following are undisputed facts, as held in the Court's partial order on summary judgment. Lenco manufactured and sold trim tabs and other products to boat manufacturers, and Defendant Samuel Mullinax served as the CEO and Defendant Richard DeVito was the president. (Dkt. No. 28-9 at

¶ 3 – 4.) Lenco was sold to Power Products, LLC in December 2016. (*Id.* at ¶ 13.) Plaintiff was hired by Lenco no later than May 2007. (Plaintiff's Deposition, Dkt. No 28-1 at 35.) Plaintiff testified that during discussions regarding his compensation with Defendant DeVito prior to starting at Lenco, they had a "discussion that we [Plaintiff and Brian Robinson, another employee of Lenco] both wanted to have equity ownership at some point in time in the future." (*Id.* at 29.) Plaintiff acknowledges that at the time he began at Lenco, he did not yet have an agreement regarding an equity interest in the company, and instead Defendant DeVito stated that they would "work on that as we go on down the road." (*Id.* at 33 – 34; Plaintiff's Deposition, Dkt. No. 28-2 at 23.) Though Defendants dispute the nature of the conversation, Plaintiff testified that Defendant DeVito ultimately provided some detail on the equity plan in early 2009,[1] informing Plaintiff and Robinson that Lenco was going to buy back a 15 percent interest from a minority shareholder, Matthew Muer, and distribute it as a three percent share to five employees, including Plaintiff and Robinson. (Dkt. No. 28-2 at 26 – 27; 30 – 31; 35.) Plaintiff believed that the five sets of three percent equity shares would be issued contemporaneously with the stock buyback. (*Id.* at 30.)

In 2011, Plaintiff and Robinson had two conversations with Defendant DeVito regarding the ownership share.[2] When Plaintiff and Robinson were in Florida with DeVito, they approached DeVito asking, "where were we with our deal," meaning the "stock transfer." (Plaintiff's Deposition, Dkt. No. 28-3 at 5 – 6.) Defendant DeVito, as they approached, "pretty much blew [them] off." (*Id.*) On another evening during a cookout at Defendant DeVito's house, Plaintiff testified that he and Robinson again asked about the stock transfer, and Defendant DeVito

---

[1] Plaintiff testified the conversation occurred in early 2009, though Defendants submitted evidence that Lenco purchased the 15% ownership interest in November 2007. (Dkt. No. 28-9 at 4.)

[2] Plaintiff testified these conversations occurred approximately a month before Robinson resigned from Lenco. (Dkt. No. 28-3 at 6.) Robinson resigned in August 2011. (Dkt. No. 28-9 at ¶ 7.)

"abruptly left our presence and went into his house." (*Id.* at 7.) Robinson resigned shortly thereafter without any ownership share of Lenco. (*Id.*; 29-2 at ¶ 14.)

Defendant DeVito also told Plaintiff that he did not want to distribute ownership shares in the company while there was a pending lawsuit against Lenco, filed by Bennett Marine. (Dkt. No. 28-2 at 32.) Plaintiff testified that this was because Defendant DeVito wanted to protect them from potential liability in the lawsuit. (*Id.*; 29-1 at ¶ 6.) The Bennett Marine litigation concluded in September 2013 in favor of Lenco. (Dkt. No. 28-3 at 3.) However, when the allegedly impeding Bennett Marine lawsuit ended, Plaintiff did not receive the promised three percent interest. (Dkt. No. 29-1 at ¶ 10.) When Plaintiff asked about the three percent of equity, Defendant DeVito refused to speak about the shares, telling Plaintiff he "didn't want to talk about it or we'd [DeVito and Plaintiff] talk about it later." (*Id.*) Finally, near the end of 2016, Plaintiff asked Defendant DeVito whether he "still intend[ed] to fulfill [his] promise to me of my 3%," and DeVito stated "No, I am not." (*Id.* at ¶ 11; Dkt. No. 28-3 at 12.)

Plaintiff brought six counts against Defendants: Breach of Contract and Covenant of Good Faith and Fair Dealing (Count 1); Promissory Estoppel (Count 2); Quantum Meruit and Unjust Enrichment (Count 3); Negligent Misrepresentation (Count 4); Constructive Fraud (Count 5), and; the South Carolina Payment of Wages Act ("SCPWA") (Count 6). The District Court has granted summary judgment based on the applicable three-year statute of limitations on each claim except for promissory estoppel.

### III. Legal Standard

South Carolina Appellate Court Rule 244 provides that the Supreme Court of South Carolina:

> in its discretion may answer questions of law certified to it by any federal court of the United States ... when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be

determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

SCACR 244(a). The certification order must set forth: (1) "the questions of law to be answered"; (2) "all findings of fact relevant to the questions certified"; and (3) "a statement showing fully the nature of the controversy in which the questions arose." SCACR 244(b).

## IV. **Nature of the Controversy**

Defendants moved for summary judgment, arguing that this action is barred by the applicable three-year statute of limitations under S.C. Code Ann. § 15-3-530. However, the Parties disagreed whether the three-year statute of limitations applies to the quasi-contractual claim of promissory estoppel.[3] To address this controversy, the Court would necessarily have to determine a state law question regarding whether S.C. Code Ann. § 15-3-530 applies to claims for promissory estoppel. It appears that the Supreme Court of South Carolina has never definitively addressed this issue.

Plaintiff argues that § 15-3-530 does not apply to promissory estoppel as it is an equitable claim. Plaintiff relies on *Dixon v. Dixon*, 362 S.C. 388, 400, 608 S.E.2d 849, 855 (2005), a Supreme Court of South Carolina decision involving equitable claims for undue influence and

---

[3] The Court ruled that the three-year statute of limitations in S.C. Code Ann. § 15-3-530 applied to causes of action for quantum meruit and unjust enrichment, relying on the following authorities: *Graham v. Welch*, 743 S.E.2d 860, 862 (S.C.Ct.App.2013) (applying three-year statute of limitations applies to unjust enrichment claims and holding claim begins to run when injured party knew or should have known that the claim existed); *Crossroads Convenience, LLC v. First Cas. Ins. Grp.*, No. 1:15-CV-02544-JMC, 2017 WL 1135132, at *6 (D.S.C. Mar. 27, 2017) ("Under South Carolina law, quantum meruit claims are subject to § 15-3-530(1)'s three-year statute of limitations.") (collecting cases); *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *3 (D.S.C. Jan. 22, 2014) ("Under South Carolina law...unjust enrichment claims are governed by a three-year statute of limitations.") *citing* S.C. Code. Ann. § 15-3-510(1); 530(5).

failure of consideration, which held that "the statute of limitations does not apply to actions in equity."[4]

Defendants argue that promissory estoppel is a quasi-contractual claim, and therefore § 15-3-530 applies. Defendants point to a Supreme Court of South Carolina decision holding that a claim for promissory estoppel is quasi-contractual. *See N. Am. Rescue Prod., Inc. v. Richardson*, 411 S.C. 371, 379, 769 S.E.2d 237, 241 (2015) ("Promissory estoppel is a quasi-contract remedy."). Further, Defendants' argue that S.C. Code Ann. § 15-3-530 has expansive language which would apply to quasi-contractual claims. Specifically, S.C. Code Ann. § 15-3-530(1) states the three-year statute of limitations applies to: "an action upon a contract, obligation, or liability, express or implied, excepting those provided for in Section 15-3-520[.]" Other courts have also pointed to S.C. Code Ann. § 15-3-530(5) which applies the statute of limitations to: "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law, and those provided for in Section 15-3-545[.]" *See Graham v. Welch*, 743 S.E.2d 860, 862 (S.C.Ct.App.2013) (citing § 15-3-530(5) and applying three-year statute of limitations to unjust enrichment claim).

## IV. Conclusion

In sum, the Court concludes that the answer to the question certified herein may be determinative of a cause of action in this case, and there is no controlling precedent in the decisions

---

[4] Plaintiff also cites: *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 263, 440 S.E.2d 129, 132 (1994) (holding that quantum meruit is an equitable doctrine); *Bigford Enterprises, Inc. v. D.C. Dev., Inc.*, No. 2015-UP-330, 2015 WL 4068101, at *1 (S.C. Ct. App. July 1, 2015) (per curiam applying *Dixon* in action involving piercing corporate veil); *Mazloom v. Mazloom*, 382 S.C. 307, 319, 675 S.E.2d 746, 752 (Ct. App. 2009), *aff'd*, 392 S.C. 403, 709 S.E.2d 661 (2011) (finding statute of limitations did not apply to equitable claim for corporate dissolution and accounting).

of the Supreme Court of South Carolina. Accordingly, pursuant to South Carolina Appellate Rule 244, the Court respectfully:

**CERTIFIES** the question stated in Part I of this Order to the Supreme Court of South Carolina; and

**ORDERS** the Clerk of this Court to forward to the Supreme Court of South Carolina under the official seal of this Court, a copy of this Certification Order together with the original or copies of the record before this Court to the extent requested by the Supreme Court of South Carolina.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 2, 2019
Charleston, South Carolina